UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:10-cv-60624-WJZ (Zloch/Rosenbaum)

HARVEY GOODMAN,

Plaintiff,

v.

TATTON ENTERPRISES, INC., a Florida corporation d/b/a THAI SPICE RESTAURANT, and SAUL & J STRACHMAN REV LIV TRUST,

Defendants.
_______________________________________/

**DEFENDANTS' JOINT VERIFIED MOTION FOR ATTORNEY'S FEES AND EXPENSES AND INCORPORATED MEMORANDUM OF LAW**

Defendants Tatton Enterprises, Inc. ("Tatton") and Saul Strachman and Judith Strachman, as co-Trustees of the Saul and J. Strachman Revised Living Trust (the "Strachmans"), by and through their respective undersigned counsel, hereby jointly move for attorney's fees and expenses against Plaintiff pursuant to 42 U.S.C. § 12205 and S.D. Fla. L.R. 7.3.

## I. INTRODUCTION

This was an action under Title III of the Americans With Disabilities Act ("ADA"). On June 28, 2011, the Court entered a final order of dismissal with prejudice [DE 75]. In that order, the Court specifically found that Defendants were the "prevailing parties" in this case. As Defendants are the prevailing parties, this motion seeks attorney's fees and expenses from Plaintiff pursuant to the ADA's fee-shifting provision, 42 U.S.C. § 12205, which provides:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

Defendants acknowledge Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978), where the Supreme Court interpreted similar fee-shifting language in Title VII of the Civil Rights Act of 1964. The Court held that a prevailing plaintiff in a Title VII proceeding should ordinarily be awarded attorney's fees in all but special circumstances, whereas a prevailing defendant should be awarded attorney’s fees only when the court, in the exercise of its discretion, finds that the plaintiff's action was frivolous, unreasonable, or without foundation.

The Eleventh Circuit has applied Christiansburg to *Title I* of the ADA – which deals with employment discrimination – see Bruce v. City of Gainesville, 177 F.3d 949, 951-52 (11th Cir. 1999). It appears the Eleventh Circuit has not addressed whether Christiansburg also applies to Title III of the ADA. Indeed, diligent research indicates that no circuit court of appeals has considered whether Christiansburg should be applied to cases brought under Title III of the ADA.

Defendants respectfully submit that the Christiansburg standard is inapplicable in this case, which arises under Title III of the ADA. Alternatively, to the extent the Court chooses to apply Christiansburg to this case, it is clear that Plaintiff’s claims were frivolous, unreasonable, or without foundation, such that Defendants should be awarded their attorney’s fees and expenses.

## II. LITIGATION BACKGROUND

Plaintiff initially named the incorrect property owner. Then the Strachmans were

then added as party-Defendants. Despite being well aware that the Strachmans were represented by counsel and despite the Strachmans' counsel advising Plaintiff's counsel that she was out of state on a family vacation, Plaintiff's counsel sought a Clerk's default against the Strachmans.[1] The Court promptly granted the Strachmans' motion to vacate the default [DE 21].

In cases like this – where the Plaintiff is alleging barriers to access at a restaurant – the logical starting point for Plaintiff's discovery efforts would be to inspect the property to determine whether any such barriers actually exist. But of course, that could obviate the need to take depositions – and increase attorney's fees – if Plaintiff realizes that no such barriers actually exist. Plaintiff's counsel failed to serve a request for entry on land. Instead, Plaintiff's counsel went right to noticing depositions. In his haste, he failed to comply with the Federal Rules of Civil Procedure and this Court's Local Rules.

Plaintiff's counsel purported to notice depositions of the Strachmans without giving notice to Tatton's counsel. Just as bad, Plaintiff's counsel unilaterally scheduled the depositions, even though he had been previously admonished by Magistrate Judge Seltzer for engaging in such tactics. See Karakis v. Foreva Jens Inc., 2009 WL 113456 (S.D. Fla. Jan. 19, 2009). As detailed in the Defendants' motion for protective order [DE 32], Plaintiff's counsel unilaterally rescheduled the depositions and the Strachmans' counsel promptly advised Plaintiff's counsel that the selected date was the Strachmans' 60th

[1] At least one federal judge has expressly discouraged such boorish behavior, which obviously is inconsistent with typical professional courtesy. See Cox v. Nasche, 149 F.R.D. 190, 192 (D. Alaska 1993) ("a party should not seek the entry of default against a party she knows is represented by an attorney without at least checking with that attorney to determine whether the party intends to litigate").

wedding anniversary. Plaintiff's counsel never responded. Then, just a few days before the scheduled depositions, during a conference call with all counsel, Plaintiff's counsel abjectly refused to postpone the Strachmans' depositions. The Court granted the Defendants' motion for protective order one business day after it was filed [DE 33].

On January 29, 2011, Defendants jointly filed a motion to enforce settlement and for sanctions [DE 34]. After seeking three enlargements of time to respond, Plaintiff finally responded [DE 44]. Pursuant to an order of referral [DE 47], on May 4, 2011, Magistrate Judge Rosenbaum held an evidentiary hearing on Defendants' joint motion to enforce settlement and for sanctions. The hearing lasted nearly all day. The Defendants themselves testified, as did Tatton's expert, Larry Schneider. Defendants' respective counsel also testified as to the settlement reached with Plaintiff's counsel. Mr. Schneider provided unrebutted testimony which confirmed what Defendants' counsel had informed Plaintiff's counsel months earlier – *there are no ADA violations at the property.*

Plaintiff Harvey Goodman did not appear at the hearing. Indeed, at the beginning of the hearing Plaintiff's counsel was seemingly surprised at the prospect of witnesses testifying. However, later during the hearing Plaintiff's counsel claimed he had notified his client of the hearing but that a medical issue precluded Plaintiff from appearing. Towards the end of the day, Plaintiff's counsel offered for Plaintiff to testify by telephone. Judge Rosenbaum gave Defendants the choice of proceeding with Plaintiff's testimony via telephone or continuing the hearing another day when the Plaintiff could appear in person. Defendants chose to proceed and agreed to allow Plaintiff to testify via telephone.

However, Plaintiff never testified. After a break, Plaintiff's counsel claimed to be suffering from a sudden asthma attack. Then Plaintiff's counsel claimed that he did not

have his asthma medication with him.  Judge Rosenbaum stated she would adjourn the hearing and that it would continue the following Tuesday, May 10, 2010.  One of the last things said on the record was Judge Rosenbaum advising Plaintiff's counsel that the first thing to be addressed when the hearing reconvened would be the apparent inconsistencies between Plaintiff's counsel representations to the Court and his representations to the Courtroom Deputy earlier in the day.

On May 10, 2011, the evidentiary hearing was scheduled to continue.  Defendants and their respective counsel were present and prepared to proceed.  However, the hearing was not held.  That morning, Plaintiff's counsel claimed to have suffered a "medical emergency."[2]  According to an e-mail sent by Plaintiff's counsel's assistant, Plaintiff's counsel was "instructed by the doctor not to return to work until Monday, May 16th."  Defendants and their respective counsel had timely arrived at the Courthouse for the hearing.  Magistrate Judge Rosenbaum's Judicial Assistant conferred with Defendants' counsel and with Plaintiff's counsel's assistant, and it was agreed that the hearing would be rescheduled to 2:00 p.m. on May 24, 2011.  Despite having been subpoenaed, Plaintiff did not appear for the hearing.

The hearing never resumed.  In fact, it became abundantly clear that Plaintiff's counsel was extremely reluctant to return to Judge Rosenbaum's courtroom to complete the evidentiary hearing.  Defendants strongly believe that Plaintiff's counsel feared an adverse ruling, especially as to the issue of sanctions.  It also appeared that Plaintiff's

---

[2]   The day before – May 9 – Defendants' undersigned attorneys spoke with Plaintiff's counsel on the phone in the afternoon.  There was absolutely no indication that Plaintiff's counsel was suffering any medical issue or would otherwise be unable to attend the hearing scheduled for the next morning on May 10.

counsel did not want his client to testify – either at a deposition or at the hearing.

Following the May 4 hearing, Plaintiff's counsel conveyed a series of ever-lower settlement demands, each of which was ignored or rejected by Defendants. Then, just days away from the scheduled resumption of the evidentiary hearing, Plaintiff filed a notice of voluntary dismissal with prejudice [DE 61]. To date, neither Plaintiff nor his counsel has explained why Plaintiff wanted to voluntary dismiss this action with prejudice. In light of the history of this case and what happened at the May 4 hearing, there is only one explanation: Plaintiff and his counsel feared an adverse ruling on the motion to enforce settlement and Defendants' request for sanctions. By voluntarily dismissing the action, Plaintiff's counsel avoided having to appear before Judge Rosenbaum to address the inconsistencies she noted between what Plaintiff's counsel had told her and what he had earlier said to the Courtroom Deputy. Finally, by voluntarily dismissing the action, Plaintiff was spared having to testify. Had he done so, Defendants believe it likely that the Court would have become aware that Plaintiff had never visited the property at issue.

## III. DEFENDANTS ARE ENTITLED TO ATTORNEY'S FEES AND EXPENSES

In Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978), the Supreme Court interpreted the fee-shifting language contained in Title VII of the Civil Rights Act of 1964. The Court held that a prevailing plaintiff in a Title VII proceeding should ordinarily be awarded attorney's fees in all but special circumstances, whereas a prevailing defendant should be awarded attorney's fees only when the court, in the exercise of its discretion, finds that the plaintiff's action was frivolous, unreasonable, or without foundation. Id. at 421.

The Eleventh Circuit has applied Christiansburg to Title I of the ADA, which

addresses disability discrimination in employment. See Bruce v. City of Gainesville, 177 F.3d 949, 951-52 (11th Cir. 1999). After diligent research, Defendants have been unable to find any circuit court of appeals decision which has considered whether Christiansburg should be applied to Title III of the ADA, which deals with places of public accommodation, including restaurants, retail stores, hotels and other businesses open to the public.

**A. Christiansburg is Inapplicable to this Case**

Defendants respectfully submit that the Christiansburg standard is inapplicable in this case, which arises under Title III of the ADA. In the absence of the Christiansburg standard for prevailing defendants, the Court is left with the plain language of the statute, which allows the Court, in its discretion, to award the prevailing party attorney's fees, litigation expenses and costs. See 42 U.S.C. § 12205. And the Court should exercise its discretion in favor of awarding Defendants their attorney's fees and expenses. Such an award is especially appropriate in this case, where Defendants incurred *thousands* of dollars in attorney's fees, only to have Plaintiff voluntarily dismiss this action with prejudice to avoid an adverse ruling on a potentially case-dispositive motion and a request for sanctions.

This Court should narrowly construe Christiansburg. The Christiansburg standard arose in the context of employment discrimination. In ruling that prevailing plaintiffs should ordinarily be awarded fees in nearly all cases, the Supreme Court observed that the fee-shifting provision was intended, in part, to "make it easier for a plaintiff of limited means to bring a meritorious suit." 434 U.S. at 420 (internal quotation marks and citation omitted). At the same time, the Court found that Congress "also wanted to protect defendants from burdensome litigation having no legal or factual basis." Id.

The Christiansburg standard makes eminent sense in the context of employment discrimination, where the plaintiff is unlikely to have ever filed a prior similar lawsuit or to file another such lawsuit in the future. Moreover, the Christiansburg standard allows for a more level playing field, incentivizing attorneys to take meritorious plaintiffs' cases with the near-certainty of recovering fees is the case is won.

Title III ADA cases are significantly different than employment discrimination cases. There is no indication that Title III plaintiffs are having any difficulty whatsoever in getting attorneys to represent them. In fact, just the opposite. Here, Plaintiff Harvey Goodman has filed about *25* Title III lawsuits in this District within the past three years – all with the same attorney who represents him in this case. He has also filed at least three Title III lawsuits in the Middle District of Florida.

Indeed, it is abundantly clear that Plaintiff falls into the category of a "professional plaintiff." See Association for Disabled Americans, Inc. v. Integra Resort Management, Inc., 385 F. Supp. 2d 1272 (M.D. Fla. 2005). Simply put, if Mr. Goodman wishes to serve as a professional plaintiff, then he should be required to play by the same rules as the defendants he sues, including having to face the same prospect of an adverse attorney's fee ruling as does the defendant.

Such a level playing field is especially necessary in Title III cases, which for some years now have received repeated judicial recognition as a particular area of abuse by "professional plaintiffs" and their counsel. For example, in Rodriguez v. Investo, L.L.C., 305 F. Supp. 2d 1278 (M.D. Fla. 2004), Judge Presnell bemoaned the "cottage industry" which has arisen in the context of Title III litigation:

[The ADA's] statutory scheme has resulted in an explosion of private ADA-

> related litigation. For example, in this District alone, there have been hundreds of Title III cases filed in the past three years. These cases have been filed by a relatively small number of plaintiffs (and their counsel) who have assumed the role of private attorneys general.
>
> Why would an individual like Plaintiff be in such a rush to file suit when only injunctive relief is available? Wouldn't conciliation and voluntary compliance be a more rational solution? Of course it would, but pre-suit settlements do not vest plaintiffs' counsel with an entitlement to attorney's fees. Buckhannon Bd. and Care Home, Inc., v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Moreover, if a plaintiff forebears and attempts pre-litigation resolution, someone else may come along and sue first. The current ADA lawsuit binge is, therefore, essentially driven by economics – that is, the economics of attorney's fees.

Id. at 1281-82 (footnotes omitted). Judge Presnell observed that in such "professional plaintiff" cases – where the defendant rarely if ever receives pre-suit notice of ADA non-compliance – such "litigation carries only negative economic value – it has accomplished nothing but expense and waste of precious judicial resources." Id. at 1282, n. 14.

Judge Conway expressed similar concerns and suggested that a legislative solution was necessary:

> [I]t should be emphasized that the system for adjudicating disputes under the ADA cries out for a legislative solution. Only Congress can respond to vexatious litigation tactics that otherwise comply with its statutory frameworks. Instead of promoting "conciliation and voluntary compliance[,]" the existing law encourages massive litigation. "[P]re-suit settlements[,]" after all, "do not vest plaintiffs' counsel with an entitlement to attorney's fees" under the ADA. Moreover, the means for enforcing the ADA (attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals) .... This type of shotgun litigation undermines both the spirit and purpose of the ADA.

Brother v. Tiger Partner, LLC, 331 F. Supp. 2d 1368, 1375 (M.D. Fla. July 6, 2004).

The Christiansburg standard was intended to level the playing field between employment discrimination plaintiffs and employer defendants. In the Title III context – and

certainly in this case – no "leveling" is necessary.  If anything, it is the defendants who need help.  See Integra Resort Management, Inc., 385 F. Supp. 2d at 1283, n.7 ("Small business owners often ask this Court to stop the extortion").

**B.     Plaintiff's Claims Were Frivolous, Unreasonable and/or Without Foundation**

Even if the Christiansburg standard is applicable to this case, Defendants are nevertheless entitled to an award of reasonable attorney's fees and expenses because Plaintiff's claim was frivolous, unreasonable and/or without foundation.

In Sullivan v. School Bd. of Pinellas County, 773 F.2d 1182 (11th Cir. 1985), the Eleventh Circuit set forth three "general guidelines" for analyzing a plaintiff's case against the Christiansburg standard: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." Id. at 1189. The court added that these are "general guidelines only, not hard and fast rules." Id.  Ultimately, the determination is to be made "on a case-by-case basis." Id.

Here, Plaintiff never established a prima facie case.  In fact, at an evidentiary hearing held before Magistrate Judge Rosenbaum on May 4, 2011, Defendant Tatton's expert witness, Larry Schneider, provided unrebutted testimony that there *no* ADA violations at the property at issue.  Plaintiff failed to offer *any* evidence of a prima facie case.  Indeed, Plaintiff provided no evidence whatsoever.  Although Defendants agreed that Plaintiff could testify via telephone, before Plaintiff was able to testify his attorney claimed to be suffering from a sudden asthma attack and the hearing was adjourned.  Although the hearing was rescheduled to the following week, it never took place because the morning of the hearing Plaintiff's counsel claimed to be too ill to proceed.  Shortly

before the next scheduled evidentiary hearing date, Plaintiff suddenly filed a notice voluntarily dismissing this action with prejudice.

Defendants acknowledge that they offered to settle. But the offer must be analyzed in context. First, the offer included Defendants agreeing to make modifications recommended by Tatton's expert Larry Schneider. *But those modifications had already been performed.* As to Plaintiff's attorneys fees and costs, Defendants *refused* Plaintiff's counsel's exorbitant and unjustified demand. Instead, Defendants were willing to allow the Court to decide the issue, but Plaintiff and his counsel refused. That led to Defendants filing a motion to enforce settlement and for sanctions [DE 34]. The upshot is that Defendants' offer to settle in no way reflected a belief on Defendants' part that Plaintiff's claims had any merit whatsoever. Rather, it was an attempt to "stop the bleeding."

After the May 4, 2011 evidentiary hearing, it was Plaintiff and his counsel who were anxious to settle. Plaintiff's counsel unilaterally conveyed a series of ever-dwindling demands for attorney's fees to settle this case, each of which was ignored or rejected by Defendants (who by that time had incurred *thousands* of dollars in attorney's fees and expenses). After that, and shortly before the next scheduled evidentiary hearing date, Plaintiff suddenly filed a notice voluntarily dismissing this action with prejudice.

The Court dismissed this action, with prejudice, prior to any full-blown trial.[3] Under the circumstances, Plaintiff's sudden request for a voluntary dismissal with prejudice can *only* be viewed as a tacit acknowledgment that this case was frivolous, unreasonable

[3] Although, as noted, the Court did conduct a full-day evidentiary hearing, at which Defendants offered unrebutted testimony that there existed no ADA violations at the property at issue.

and/or without foundation. Indeed, it seems clear that the voluntary dismissal was nothing more than an attempt to escape what Plaintiff and his counsel expected to be an adverse ruling on Defendants' motion to enforce settlement and for sanctions. See Jerelds v. City of Orlando, 194 F. Supp. 2d 1305, 1328 (M.D. Fla. 2002) (plaintiff cannot avoid sanctions by voluntarily dismissing a frivolous or unreasonable claim in order to avoid an unfavorable judgment on the merits).

That this case was frivolous, unreasonable and/or without foundation is also confirmed by Plaintiff's failure to provide Defendants with any type of pre-suit notice. The Eleventh Circuit has held that "a district court may consider whether the plaintiff's failure to ask for or to accept voluntary compliance prior to suit indicates that the plaintiff has acted in bad faith, has been unduly litigious, or has caused unnecessary trouble and expense." Association of Disabled Americans v. Neptune Designs, Inc., 469 F.3d 1357, 1360 (11th Cir. 2006).

In sum, even if the Christiansburg standard applies in this instance, Defendants are nevertheless entitled to prevailing party attorney's fees and expenses because Plaintiff filed and maintained a claim which was frivolous, unreasonable and/or without foundation. See Goldstein v. Costco Wholesale Corp., 322 F. Supp. 2d 660, 667 (E.D. Va. 2004) (awarding attorney's fees to prevailing defendant in Title III case under Christiansburg standard based on plaintiff allowing claim to be filed unreasonably).

## IV. DEFENDANTS' ATTORNEY'S FEES AND EXPENSES ARE FAIR AND REASONABLE

### A. Exhibits to Motion

For the Court's easy reference, attached are the following exhibits in support of this

motion:

- **Exhibit "A"**: Declaration of Adam S. Chotiner, Counsel for Tatton, which includes verification of this motion.
- **Exhibit "B"**: Declaration of Roslyn L. Stevenson, Counsel for the Strachmans, which includes verification of this motion.
- **Exhibit "C"**: Billing records from Adam S. Chotiner's law firm, Shapiro, Blasi, Wasserman & Gora, P.A. for this case.
- **Exhibit "D"**: Billing records from Roslyn L. Stevenson's law firm, Roslyn L. Stevenson, P.A.
- **Exhibit "E"**: Declaration of Matthew Weinstein, Esq. attesting to reasonableness of claimed attorney's fees.
- **Exhibit "F"**: Billing records from Tatton's expert witness, Larry Schneider.
- **Exhibit "G"**: Billing records from the Strachmans' expert witness, Jeffrey Gross.

**B. Applicable Legal Standards**

"The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." American Civil Liberties Union v. Barnes, 168 F.3d 423 (11th Cir. 1999) (quoting Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988) (additional

citations omitted).

With respect to the issue of hourly rates, the Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value." Norman, 836 F.2d at 1303.

In determining what is a "reasonable" hourly rate and what number of compensable hours is "reasonable," a court may consider the twelve factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974); accord Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1340 (11th Cir. 1999).[4] In addition, a district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness." Cullen's v. Georgia Dept. of Transp., 29 F.3d 1489, 1492-93 (11th Cir. 1994).

## C. The Claimed Attorney's Fees are Fair and Reasonable

The attached declarations of Defendants' respective attorneys establish that counsel are well experienced in litigating ADA Title III actions. The declarations discuss the attorneys' experience and qualifications in general, and as to Title III cases in particular. Moreover, the declarations set forth the respective attorneys' hourly rate, which

---

[4] Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-719.

is $300.00 for both Mr. Chotiner and Ms. Stevenson.[5]

Also attached is the declaration of attorney Matthew Weinstein, who also is an experienced Title III litigator. Mr. Weinstein opines that a $300.00 hourly rate is reasonable for both Defendants' respective counsel, and that the services performed by counsel, and the time spent performing them (as reflected on the billing records, also attached), were reasonable and reasonably necessary to the defense of this matter.

This was not a "typical" ADA Title III case. Most Title III cases are resolved fairly quickly by settlement, whereby the parties agree on modifications to be made to the property at issue and the defendant agrees to pay plaintiff's attorney's fees and costs. At one point, relatively early in the litigation, it appeared this case might be concluded in that fashion. However, Plaintiff's counsel was completely unreasonable in terms of the payment of his attorney's fees and costs. That resulted in Defendants filing a motion to enforce settlement and for sanctions, which in turn resulted in a day-long evidentiary hearing. Moreover, during the case, Plaintiff sought a default (which was promptly vacated); unilaterally scheduled depositions (which resulted in a motion for protective order, which was granted); and engaged in other behavior which required the considerable expenditure of time on the part of Defendants' counsel. A more detailed history of what transpired during this case is set forth in Defendants' motion for sanctions [DE 80]. Defendants respectfully submit that, as confirmed by Mr. Weinstein, the time their counsel spent on this matter was not only reasonable, but reasonably necessary.

---

[5] By comparison, Plaintiff's counsel has claimed an hourly rate ranging from $350.00, Karakis v. Argentinian Grill, LLC, 2010 WL 298599 at *2 (S.D. Fla. Jan. 20, 2010), to $425.00, Hirsch v. Sweet N Sour Corp., 2011 WL 3741008 at *3 (S.D.N.Y. Aug. 25, 2011).

The billing records reflect that as of the service of this motion, Tatton seeks a total of $36,270.00 in attorney's fees, and the Strachmans seeks a total of $31,730.00.[6]

**D. Defendants are Entitled to Recovery of Expert Witness Expenses**

The ADA permits the recovery of not just attorney's fees and costs, but also "litigation expenses." See 42 U.S.C. § 12205. Courts have interpreted that language to permit prevailing parties to recover expert witness expenses. See, e.g., Fox v. The Marquis Corp., 2010 WL 1010871 at *2, n. 11 (S.D. Fla. Mar. 15, 2010); Martinez v. Public Storage, 2010 WL 2219712 at *9 (S.D. Fla. Apr. 27, 2010); Raetano v. M. Russell, LLC, 2010 WL 3259434 at *2 (M.D. Fla. July 29, 2010).

Attached hereto are invoices from Defendants' respective expert witnesses. As noted, Tatton's expert witness, Larry Schneider, testified before Judge Rosenbaum at an evidentiary hearing on May 4, 2011. The attached declarations from Defendants' respective counsel confirm that the fees incurred by the respective expert witnesses were reasonable and necessary.

Pursuant to the respective expert witnesses' billing records, Tatton seeks $3,774.00 in expert witness expenses, and the Strachmans seek $1,695.75 in expert witness expenses.

**V. CERTIFICATE OF COUNSEL PURSUANT TO S.D. FLA. L.R. 7.3(b)**

Pursuant to S.D. Fla. L.R. 7.3(b), Defendants' respective counsel hereby certify that a draft of this motion, including all exhibits, was served on Plaintiff's counsel, but not filed

---

[6] Defendants intend to supplement this motion to seek additional fees incurred after this motion is served. See Villano v. City of Boynton Beach, 254 F.3d 1302, 1309–10 (11th Cir. 2001) ("A prevailing party is entitled to reasonable compensation for litigating a [fee] award").

with the Court, on September 6, 2011. Defendants filed a notice of compliance [DE 82] and sent a cover letter to Plaintiff's counsel reminding him of his obligation to confer with Defendants' counsel within twenty-one (21) days and attempt in good faith to agree on entitlement to and the amount of attorney's fees and expenses as claimed in this motion. Plaintiff's counsel was also reminded of his obligation, pursuant to Local Rule 7.3(b), to "describe in writing and with reasonable particularity each time entry or non-taxable expense to which it objects, both as to issues of entitlement and amount, and shall provide supporting legal authority."

More than twenty-one (21) days have passed since Defendants served the draft of this motion on Plaintiff's counsel. Plaintiff's counsel has failed and refused to even acknowledge service of the draft motion, much less attempt to confer with Defendants' counsel in good faith. Moreover, Plaintiff's counsel has violated Local Rule 7.3(b) by failing to describe in writing and with reasonable particularity any time entries or non-taxable expenses to which he objects.

Accordingly, Defendants submit that Plaintiff has waived his right to oppose this motion. If Plaintiff wished to oppose this motion, Local Rule 7.3(b) required Plaintiff to attempt to confer in good faith and to convey in writing any objections to the amount claimed. Plaintiff did neither and thus the Court should disregard any opposition Plaintiff might now file.

## VI. CONCLUSION

As the prevailing parties in this case, Defendants are entitled to an award of reasonable attorney's fees and expert witness expenses. The Christiansburg standard for awarding attorney's fees to prevailing defendants in employment discrimination cases

should not be applicable to ADA Title III cases in general, and certainly not to this case in particular. But even if the Christiansburg standard applies to this case, Defendants are nevertheless entitled to attorney's fees and expenses since Plaintiff's claim was frivolous, unreasonable and/or without foundation.

Respectfully submitted this 11th day of October, 2011.

*/s Roslyn L. Stevenson*[7]
Roslyn L. Stevenson, Esq.
Florida Bar No. 829803
E-mail: roslyn.rlslaw@gmail.com
Roslyn L. Stevenson, P.A.
411 South Presidential Circle
4000 Hollywood Boulevard
Hollywood, Florida 33021
Telephone: (954) 964-0061
Facsimile: (954) 964-6303
Counsel for Defendants
Saul & J. Strachman, as Trustees

*/s Adam S. Chotiner*
Adam S. Chotiner, Esq.
Florida Bar No. 0146315
E-mail: aschotiner@sbwlawfirm.com
Shapiro, Blasi, Wasserman &
Gora, P.A.
7777 Glades Road, Suite 400
Boca Raton, Florida 33434
Telephone: (561) 477-7800
Facsimile: (561) 477-7722
Counsel for Defendant Tatton
Enterprises, Inc.

---

[7] Roslyn L. Stevenson has provided Adam S. Chotiner with express authority to jointly serve this motion.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

*s/ Adam S. Chotiner*
ADAM S. CHOTINER, ESQ.

**SERVICE LIST**

Harvey Goodman v. Tatton Enterprises, Inc., et al.
Case No. 0:10-cv-60624-WJZ   (Zloch/Rosenbaum)
United States District Court, Southern District of Florida

B. Bradley Weitz, Esq.
E-Mail:  bbw@weitzfirm.com
The Weitz Law Firm, P.A.
18305 Biscayne Blvd., Suite 214
Aventura, FL  33160
Telephone:   (305) 949-7777
Facsimile:   (305) 949-3877
Counsel for Plaintiff
*Via CM/ECF*

Adam S. Chotiner, Esq.
E-Mail:  aschotiner@sbwlawfirm.com
Shapiro, Blasi, Wasserman & Gora, P.A.
7777 Glades Road, Suite 400
Boca Raton, FL  33434
Telephone:   (561) 477-7800
Facsimile:   (561) 477-7722
Counsel for Defendant Tatton Enterprises
*Via CM/ECF*

Roslyn L. Stevenson, Esq.
E-Mail:  roslyn.rlslaw@gmail.com
Roslyn L. Stevenson, P.A.
411 South Presidential Circle
4000 Hollywood Blvd.
Hollywood, FL  33021
Telephone:   (954) 964-0061
Facsimile:   (954) 964-6303
Counsel for Defendants Saul & J Strachman
  Rev Liv Trust
*Via CM/ECF*